UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

GOVERNMENT EMPLOYEES
INSURANCE COMPANY, GEICO
INDEMNITY COMPANY, GEICO
GENERAL INSURANCE COMPANY
and GEICO CASUALTY COMPANY,

              Plaintiffs,

   -against-

AKIVA IMAGING INC., RASHBI
DIAGNOSTICS IMAGING INC., I&A
IMAGING LLC, SHAARE TZION
IMAGING LLC, HEALTHCARE
MEDICAL SERVICES PLLC, DS
MEDICAL DIAGNOSTICS P.C.,
RASHBI VENTURES LLC, ARTUR
KOFMAN, ISAAC MIZRAHI,
DAVID MODNYY, ELCHIN
RAFAILOV, ALEC MILLER,
DANIEL SHIFTEH, M.D., HANAN
MILLER, M.D., AND JOHN DOE
DEFENDANTS "1"–"10",

             Defendants.

**MEMORANDUM AND ORDER**
Case No. 1:24-CV-6549 (FB) (JAM)

---

*Appearances:*
*For the Plaintiffs:*
JOHN PAUL MULVANEY
MICHAEL A. SIRIGNANO
BARRY I. LEVY
Rivkin Radler LLP
926 RXR Plaza
Uniondale, NY 11556

*For the Defendants Akiva Imaging Inc.,*
*Rashbi Diagnostics Imaging Inc., I&A*
*Imaging LLC, Shaare Tzion Imaging*
*LLC, DS Medical Diagnostics P.C.,*
*Rashbi Ventures LLC, Artur Kofman,*
*Isaac Mizrahi, David Modnyy, Elchin*
*Rafailov, Alec Miller, and Daniel*
*Shifteh, M.D.,*
AUSTEN OBIAJULY UGWECHES
Austen O. Ugweches, Esq.
21 Col. Robert Magaw Place, Ste 2a

1

New York, NY 10033
GARY TSIRELMAN
STEFAN BELINFANTI
Gary Tsirelman P.C.
129 Livingston Street
Brooklyn, NY 11201

*For the Defendants Healthcare*
*Medical Services PLLC and Hanan*
*Miller, M.D.,*
OLEG RYBAK
MICHAEL KROOPNICK
The Rybak Firm, PLLC
1810 Voorhies Avenue, Ste 7
Brooklyn, NY 11218

**BLOCK, Senior District Judge:**

Plaintiffs Government Employees Insurance Company, GEICO Indemnity Company, GEICO General Insurance Company, and GEICO Casualty Company (collectively, "Plaintiffs" or "GEICO") bring this action against Akiva Imaging Inc., Rashbi Diagnostics Imaging Inc., I&A Imaging LLC, Shaare Tzion Imaging LLC, Healthcare Medical Services PLLC, DS Medical Diagnostics P.C., Rashbi Ventures LLC, Artur Kofman, Isaac Mizrahi, David Modnyy, Elchin Rafailov, Alec Miller, Daniel Shifteh, M.D., Hanan Miller, M.D., and John Doe Defendants "1"–"10" (collectively, "Defendants"). GEICO alleges that Defendants committed civil violations under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), common law fraud, unjust enrichment, and aiding and abetting fraud.

2

Additionally, GEICO seeks a declaratory judgement that Defendants may not recover on any of the outstanding bills submitted to it.

GEICO now moves for a preliminary injunction to (1) stay all of Defendants' pending No-Fault insurance collection arbitration and state-court collection lawsuits against GEICO,[1] pending disposition of GEICO's declaratory judgment and RICO claims, and (2) enjoin Defendants from commencing new no-fault insurance collection arbitration or state-court collection lawsuits against GEICO, pending resolution of this action. Defendants[2] have moved to stay this action "pending resolution of the arbitrable claims" or, alternatively, to dismiss it. ECF No. 71-1 at 5.

For the following reasons GEICO's motion is GRANTED and Defendants' motions are DENIED.[3]

## I.    Preliminary Injunction

The issue before this Court has plagued district courts in this circuit for years: an insurer asserts that health care providers "devised a scheme to profit from New York's No-Fault regime by submitting fraudulent claims for reimbursement"

---

[1] At the time the parties briefed this motion, Defendants had initiated over 600 civil court cases and approximately 8 arbitrations. ECF No. 68-4 at ¶ 9.

[2] Defendants Healthcare Medical Services PLLC and Hanan Miller, M.D. "are close to settling their case and take no position on this issue." ECF No. 73-1 at ¶ 2.

[3] The Court did not grant Defendants' request for an evidentiary hearing because the record adequately supports the sought injunction. *See State Farm Mut. Auto. Ins. Co. v. Tri-Borough NY Med. Prac. P.C.*, 120 F.4th 59, 83–84 (2d Cir. 2024).

3

through piece-meal arbitration and state-court proceedings. *State Farm Mut. Auto. Ins. Co. v. Tri-Borough NY Med. Prac. P.C.*, 120 F.4th 59, 73 (2d Cir. 2024). Taken separately, these piece-meal proceedings might seem innocuous. Considered collectively, they reveal the alleged underlying fraudulent scheme under RICO. Insurers who bring these RICO claims typically ask district courts to enjoin providers from proceeding with ongoing collections arbitrations and from initiating new arbitrations or state-court collections.[4] Absent comprehensive guidance from the circuit, district courts have repeatedly granted these injunctions. This Court has too. *See, e.g.*, *Gov't Emps. Ins. Co. v. Clarke*, No. 1:23-CV-4605, 2024 WL 2387788 (E.D.N.Y. May 23, 2024); *Gov't Emps. Ins. Co. v. Zaitsev*, No. 1:20-CV-03495, 2021 WL 3173171 (E.D.N.Y. July 27, 2021); *Gov't Emps. Ins. Co. v. Zilberman*, No. 1:20-CV-00209, 2021 WL 1146086 (E.D.N.Y. Mar. 25, 2021); *Gov't Emps. Ins. Co. v. Moshe*, No. 1:20-CV-1098, 2020 WL 3503176 (E.D.N.Y. June 29, 2020).

Now, the Second Circuit has spoken. It has embraced that approach and expanded its reach—enabling district courts to enjoin ongoing state-court collections proceedings—in its recent decision, *State Farm Mut. Auto. Ins. Co. v. Tri-Borough NY Med. Prac. P.C.*, 120 F.4th 59, 95 (2d Cir. 2024). There, the State

---

[4] District courts had typically refused to enjoin pending state-court collections suits due to the Anti-Injunction Act ("AIA"). *See, e.g.*, *Gov't Emps. Ins. Co. v. Mayzenberg*, No. 17-CV-2802, 2018 WL 6031156, at *7–*8 (E.D.N.Y. Nov. 16, 2018).

Farm plaintiffs—insurers—brought RICO claims alleging that "health care providers and related individuals and entities that treat automobile accident victims"—providers— "engaged in a massive scheme to fraudulently obtain No-Fault benefits."[5] *Id.* at 70. State Farm sought the preliminary injunction typical in these cases and requested that the district court enjoin pending state-court proceedings. *Id.* at 76. The district court granted the typical injunction but refused to enjoin pending state-court proceedings. *Id.* On appeal, the Second Circuit affirmed the injunction but reversed the district court's denial, holding that district courts can enjoin pending state-court collections in such cases pursuant to the "expressly authorized" exception to the Anti-Injunction Act's "general prohibition on such injunctions." *See id.* at 92–99.

A. <u>*Tri-Borough* Explained and Applied</u>

The Circuit in *Tri-Borough* first turned to the preliminary injunction. It found irreparable harm that warranted injunctive relief given the "global and intertwined nature of the fraud" which was "effectively obscured in the fragmented state-court proceedings and arbitrations due to an incomplete factual record, in addition to the risk of inconsistent judgments, frustration of declaratory judgment relief, and possible preclusive effect." *Id.* at 80. It then found serious questions on

---

[5] Throughout this opinion, the Court omits all internal quotation marks, footnotes, and citations, and adopts all alterations, unless otherwise indicated.

the merits based on State Farm's detailed complaint that alleged "an elaborate RICO scheme spanning years," describing "a web of interconnected relationships among the various Defendants, illegal financial arrangements tying many of the Defendants together, medically unnecessary treatment and services provided to patients, and unauthorized ownership or operation of medical facilities by some Defendants." *Id.* at 84. It also found that the balance of hardships tipped decidedly in State Farm's favor because State Farm would have to defend against "thousands of arbitrations and state-court proceedings . . . absent an injunction." *Id.* at 85. Finally, it found that the injunction was in the public interest because it would prevent fraud and would "preserve [GEICO's] ability to prove its allegations of a complex fraudulent scheme involving insurance benefits." *Id.* at 85–86.

The Circuit then turned to the defendants' arguments that the Federal Arbitration Act ("FAA") and the Anti-Injunction Act ("AIA") —which both prohibit courts from enjoining new and ongoing arbitrations and ongoing state-court suits respectively—bar the sought injunction.[6] *See id.* at 86–99. It held that neither did. It applied the "effective vindication" exception to the FAA because "the arbitrations materially interfere[d] with State Farm's ability to seek relief under RICO, so much so that" allowing them to proceed would prevent State Farm

---

[6] "The AIA does not prevent a federal court from restraining a party from instituting future state proceedings." *Id.* at 92 n.10.

"from 'effectively vindicating' its RICO cause of action." *Id.* at 91. That was because the arbitrations "demonstrate[d] a pattern of baseless and repetitive claims that themselves help[ed] to perpetuate and monetize a RICO violation." *Id.* The Circuit then applied the "expressly authorized" exception to the AIA because "RICO could be given its intended scope only by a stay of the hundreds of pending state-court proceedings here." *Id.* at 97. It deemed that application appropriate "where multiple meritless proceedings are a part of a scheme to violate the relevant federal law[.]" *Id.*

Like in *Tri-Borough*, GEICO asserts that the fragmented proceedings here—600 ongoing state-court suits and 8 arbitrations—obscure an allegedly "elaborate and complex fraudulent scheme," especially true as over 200 of Defendants' state proceedings relate to a single bill.[7] *Id.* at 80–81 (explaining that proving fraudulent scheme "is exceedingly difficult to establish in a proceeding on a single claim").

Specifically, GEICO alleges that fraudulent services were provided "pursuant to the dictates of laypersons not licensed to render healthcare services and as a result of unlawful quid pro quo, kickback, and referral agreements," and were "billed and performed pursuant to predetermined protocol, without regard to

---

[7] Not to mention that several Defendants have initiated additional collections proceedings since GEICO commenced this action. *See Gov't Emps. Ins. Co. v. Innovation Anesthesia & Pain Servs., P.C.*, No. 1:24-CV-2220, 2025 WL 917509, at *12 (E.D.N.Y. Mar. 25, 2025) (explaining that defendants initiating proceedings after plaintiffs filed suit "supports Plaintiffs' demonstration of irreparable harm from the real risk of future proceedings").

whether they were medically necessary, which included creating MRI reports with fictitious patient histories and fabricated and/or grossly exaggerated findings," in violation of relevant laws and regulations. ECF No. 68-1 at 22. The arbitrations here also prevent GEICO from "effectively vindicating its RICO cause of action," *Tri-Borough*, 120 F.4th at 91, and the state-court suits risk depriving GEICO of "a forum to demonstrate the existence of" the RICO scheme, curtailing RICO's "intended scope," *id.* at 98.

B. <u>Defendants' Attempt to Distinguish *Tri-Borough*</u>

Defendants try to distinguish this case from *Tri-Borough* because (1) irreparable harm requires that the underlying proceedings have "potential preclusive effect," *id.* at 81, and Defendants would stipulate to not asserting preclusive defenses; (2) GEICO misrepresents the rules regulating radiologist and MRI facilities; (3) the scheme here is not sufficiently massive to constitute the "unusual circumstances" warranting the sought injunction, *id.* at 99; and (4) the "effective vindication" exception to the FAA does not apply here as damages are not clear and definite, lacking RICO statutory ripeness. The Court does not find these arguments persuasive.

1. *Potential preclusive effect*

Defendants assert that harm in these scenarios is only irreparable if the underlying state-court suits and arbitrations have "potential preclusive effect." *Id.*

8

at 81. But such potential only "amplifie[s]" the already existing harm that stems from obfuscation of the fraudulent scheme and the need to defend against arbitrations and civil actions which "monetize [provider's alleged] fraud against" GEICO. *Id.* That Defendants wish to stipulate to not assert preclusive defenses would not stop them from "essentially financing their fraudulent practices with proceeds paid by" GEICO. *Id.*

### 2.  *Misrepresentation of rules*

Defendants contest that "GEICO misrepresent[ed] radiologists' professional responsibilities and the rules governing operations of MRI facilities," pitting GEICO's expert against Defendant Daniel Shifteh, M.D. ECF No. 69 at 6. This credibility contest demonstrates that GEICO has raised "questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberate investigation." *Tri-Borough*, 120 F.4th at 83.

### 3.  *Massiveness of fraudulent scheme*

Defendants contend that the scheme here does not reach the size and complexity required by the Circuit in *Tri-Borough* to find serious questions going to the merits and to apply the exceptions to the FAA and AIA. But serious questions exist by virtue of the scheme's complexity—the complaint "describes a web of interconnected relationships among the various Defendants, [and] illegal

9

financial arrangements typing many of the Defendants together," among other things. The number of underlying proceedings is not itself determinative. *See Gov't Emps. Ins. Co. v. Gerling*, 718 F. Supp. 3d 268, 276–77 (E.D.N.Y. 2024) (finding serious question going to merits where similar "complicated scheme" involved 47 pending lawsuits and four pending arbitrations). The same goes for the exceptions to the FAA and AIA, which apply where the underlying proceedings—however many—stifle GEICO's RICO claims. *See Tri-Borough*, 120 F.4th at 91 (applying "effective vindication" exception to FAA because "arbitrations [were] effectively powerless to resolve State Farm's RICO claims"); *id.* at 98–99 (applying "expressly authorized" exception to AIA where "state-court proceedings that are part of a massive fraudulent scheme" may themselves "further a RICO violation" by depriving plaintiffs of "a forum to demonstrate the existence of Defendants' alleged RICO scheme").

### 4. *RICO statutory ripeness*

Defendants contend that GEICO cannot invoke the "effective vindication" exception because its RICO claims lack "statutory ripeness" as damages are not yet "clear and definite." *D'Addario v. D'Addario*, 901 F.3d 80, 93 (2d Cir. 2018). Not so. That damages sought by GEICO—payments made to Defendants in reliance on their fraudulent billing submissions— "may increase over time" does not render the present damages impermissibly "speculative." *Id.* at 96. What matters is that

10

the amount of damages will not decrease. *See id.* at 93–96; *cf. Sky Med. Supply Inc.*

*v. SCS Support Claims Servs., Inc.*, 17 F. Supp. 3d 207, 232–33 (E.D.N.Y. 2014)

(explaining Second Circuit holding "that a plaintiff's damages are not 'clear and

definite' so long as that plaintiff's damages could be mitigated or abated in pending

litigation" (citing *Motorola Credit Corp. v. Uzan*, 322 F.3d 130, 136 (2d Cir.

2003)). GEICO has not initiated any "parallel proceedings" that "could

significantly affect the total amount owed"—GEICO seeks to recover through this

case. *D'Addario*, 901 F.3d at 93. Defendants' sole argument—that GEICO, if it did

not pay Defendants, would still have paid non-defendant providers the same

amount due to policy exhaustion—requires the very speculation that RICO

ripeness proscribes.

    C.  <u>Bond</u>

    Federal Rule of Civil Procedure 65(c) provides that "[t]he court may issue a

preliminary injunction or a temporary restraining order only if the movant gives

security in an amount that the court considers proper." "Courts have the discretion,

however, to require no security at all depending on the specific circumstances."

*Tri-Borough*, 120 F.4th at 86. That discretion should be exercised in "cases

involving the enforcement of public interests arising out of comprehensive federal

health and welfare statutes." *Gerling*, 718 F. Supp. at 280. And "as this Court has

previously noted, GEICO undoubtedly has the ability to pay if defendants prevail."

*Zaitsev*, 2021 WL 3173171 at *3 (citing cases). The Court thus waives the Rule 65(c) bond requirement.

## II.    Defendants' Motion to Stay

Defendants simultaneously ask the Court to stay this action for two reasons: (1) the "effective vindication" exception to the FAA does not apply here because the alleged RICO scheme is insufficiently massive; and (2) the Court should, in the interest of judicial economy, await the New York State Court of Appeals' response to the question certified by the Second Circuit in *Gov't Emps. Ins. Co. v. Mayzenberg*, 121 F.4th 404, 421 (2d Cir. 2024), *certified question accepted*, 42 N.Y.3d 1044 (2024), because it will impact issues central to this case.

Having already rejected the first contention, the Court turns to the second. The certified question in *Mayzenberg* concerns whether kickbacks alone render a provider ineligible for payment under 11 N.Y.C.R.R. § 65-3.16(a)(12), which requires providers to meet applicable licensing requirements to receive payment. *See id.* at 422. Defendants argue that this question will determine this case because GEICO's allegations do not constitute a failure to comply with some licensing requirement. But GEICO alleges that Defendants "lack entitlement to payment" for reasons besides kickbacks, including "layperson control and influence over the performance [of] MRI services, lack of medical necessity, use of independent contractors, obtaining forged and/or stamped MRI referral forms, and performing

12

MRI services pursuant to predetermined protocols." ECF No. 72 at 25; *see Gov't Emps. Ins. Co. v. Innovation Anesthesia & Pain Servs., P.C.*, No. 1:24-CV-2220, 2025 WL 917509, at *11 (E.D.N.Y. Mar. 25, 2025) (issuing identical injunction notwithstanding *Mayzenberg* because "in addition to alleging" kickback scheme, "Plaintiffs also allege[d]" other violations that would warrant denying payment). Thus, the Court of Appeals' resolution of the certified question in *Mayzenberg*, regardless of its outcome, will not impact this case so severely to warrant staying it now.[8]

### III.    Motion to Dismiss

Defendants alternatively ask the Court to dismiss GEICO's complaint for (1) lack of RICO statutory ripeness; (2) failure to plead fraud with sufficient particularly under Federal Rule of Civil Procedure 9(b); and (3) asserting claims already decided by the underlying arbitrations and state-court suits and thus precluded by *res judicata*. The Court is not persuaded.

The Court already denied Defendants' first argument regarding RICO statutory ripeness, *supra* section I(b)(4). As to the second, while Defendants do not specify which allegations are insufficiently particularized, the Court has reviewed GEICO's complaint and deems it sufficiently particular. *See Loreley Fin. (Jersey)*

---

[8] If, at some point, the Court must make a merits determination that will arguably be affected by the certified question, the Court can then entertain a motion to stay or stay proceedings *sua sponte*. *See S.E.C. v. Chestman*, 861 F.2d 49, 49 (2d Cir. 1988).

*No. 3 Ltd v. Wells Fargo Sec., LLC*, 797 F.3d 160, 171 (2d Cir. 2015) (detailing

Rule 9(b) pleading requirements). The third argument also fails because GEICO

does not seek to recover any amounts "paid pursuant to any arbitral or civil lawsuit

award." ECF No. 72 at 27. Regardless, it is premature for the Court to consider

Defendants' *res judicata* defense on a motion to dismiss where, like here, "the

basis for that defense is [not] set forth on the face of the complaint or established

by the public record." *Allstate Ins. Co. v. Elzanaty*, 916 F. Supp. 2d 273, 299

(E.D.N.Y. 2013) (denying dismissal on *res judicata* grounds in highly analogous

no-fault insurance fraud case).

## IV.    Conclusion

Accordingly, Plaintiffs' motion is GRANTED and Defendants' motions are

DENIED. Defendants are thus enjoined from initiating new or proceeding with

ongoing collections arbitrations and state-court suits.

**SO ORDERED.**

_/S/ Frederic Block_____
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
May 19, 2025

14