UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| GOVERNMENT EMPLOYEES INSURANCE COMPANY, GEICO INDEMNITY COMPANY, GEICO GENERAL INSURANCE COMPANY and GEICO CASUALTY COMPANY,<br><br>    Plaintiffs,<br><br> -against-<br><br>AKIVA IMAGING INC., RASHBI DIAGNOSTICS IMAGING INC., I&A IMAGING LLC, SHAARE TZION IMAGING LLC, HEALTHCARE MEDICAL SERVICES PLLC, DS MEDICAL DIAGNOSTICS P.C., RASHBI VENTURES LLC, ARTUR KOFMAN, ISAAC MIZRAHI, DAVID MODNYY, ELCHIN RAFAILOV, ALEC MILLER, DANIEL SHIFTEH, M.D., HANAN MILLER, M.D., AND JOHN DOE DEFENDANTS "1"–"10",<br>    Defendants. | **MEMORANDUM AND ORDER**<br>Case No. 1:24-CV-6549 (FB) (JAM) |

*Appearances:*
*For the Plaintiffs:*
JOHN PAUL MULVANEY
MICHAEL A. SIRIGNANO
BARRY I. LEVY
Rivkin Radler LLP
926 RXR Plaza
Uniondale, NY 11556

*For the Defendants Akiva Imaging Inc., Rashbi Diagnostics Imaging Inc., I&A Imaging LLC, Shaare Tzion Imaging LLC, DS Medical Diagnostics P.C., Rashbi Ventures LLC, Artur Kofman, Isaac Mizrahi, David Modnyy, Elchin Rafailov, Alec Miller, and Daniel Shifteh, M.D.,*
AUSTEN OBIAJULY UGWECHES
Austen O. Ugweches, Esq.
21 Col. Robert Magaw Place, Ste 2a
New York, NY 10033

1

        GARY TSIRELMAN
        JAMES A. MOSS
        STEFAN BELINFANTI
        Gary Tsirelman P.C.
        129 Livingston Street
        Brooklyn, NY 11201

        *For the Defendants Healthcare Medical Services PLLC and Hanan Miller, M.D.,*
        OLEG RYBAK
        MICHAEL KROOPNICK
        The Rybak Firm, PLLC
        1810 Voorhies Avenue, Ste 7
        Brooklyn, NY 11218

**BLOCK, Senior District Judge:**

In this insurance fraud case, Defendants Akiva Imaging Inc., Rashbi Diagnostics Imaging Inc., I&A Imaging LLC, Shaare Tzion Imaging LLC, DS Medical Diagnostics P.C., Rashbi Ventures LLC, Artur Kofman, Isaac Mizrahi, David Modnyy, Elchin Rafailov, Alec Miller, and Daniel Shifteh, M.D. (collectively, "Defendants") seek reconsideration pursuant to Federal Rule of Civil Procedure 59(e) and E.D.N.Y. Civil Rule 6.3 of this Court's denial of Defendants' motion to dismiss for, *inter alia*, Plaintiffs' failure to allege clear and definite damages as required for RICO statutory ripeness (the "Decision"). *See Gov't Emps. Ins. Co. v. Akiva Imaging Inc.*, No. 1:24-CV-6549, 2025 WL 1434297 (E.D.N.Y. May 19, 2025). The lack of RICO ripeness, Defendants contend, warrants dismissal of the RICO claims, and consequently the supplemental state law claims,

2

brought by Plaintiffs Government Employees Insurance Company, GEICO Indemnity Company, GEICO General Insurance Company, and GEICO Casualty Company (collectively, "Plaintiffs" or "GEICO"). Plaintiffs oppose reconsideration, asserting that the Court correctly determined in the Decision that their RICO claims—seeking damages for fraudulent claims for no-fault benefits already paid to Defendants—are ripe. The Court agrees with Plaintiffs and denies Defendants' motion for reconsideration.

## I.

A motion for reconsideration "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Analytical Survs., Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (citation modified).[1] "The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Van Buskirk v. United Grp. of Cos., Inc.*, 935 F.3d 49, 54 (2d Cir. 2019).

---

[1] Throughout this opinion, the Court omits all internal quotation marks, footnotes, and citations, and adopts all alterations, unless otherwise indicated.

3

## II.

A "civil RICO cause of action for treble damages" is not statutorily ripe "until the amount of damages becomes clear and definite." *D'Addario v. D'Addario*, 901 F.3d 80, 93 (2d Cir. 2018). The Second Circuit has held that RICO damages are not clear and definite where they can be "netted against recovery obtained from collateral and other sources," like where "the outcome of [] parallel proceedings could significantly affect the total amount owed in the case at bar[.]" *Id.* The burden is on Plaintiffs to "allege clear and definite damages[.]" *Sky Med. Supply Inc. v. SCS Support Claims Servs., Inc.*, 17 F. Supp. 3d 207, 214 (E.D.N.Y. 2014)

Defendants aver that the Court disregarded evidence of four arbitral awards denying "claims by non-defendant providers because the underlying policies had reached exhaustion."[2] Defs.' Mem. at 11, ECF No. 92 (citing ECF Nos. 71-4, 71-5, 71-6, 71-7). These exhausted policies are ones on which Defendants submitted some of the allegedly fraudulent claims paid by Plaintiffs. Accordingly, Defendants

---

[2] The Court appreciates Defendants' thorough explanation of policy exhaustion. *See* Defs.' Mem. at 8–11. To summarize, an insured person obtains a policy from an insurer (like Plaintiffs) that has a maximum coverage limit, the standard being $50,000. *See* 11 N.Y.C.R.R. § 65-3.15. That represents the maximum loss the insurer can sustain from one policy. The insured, after sustaining injuries from an automobile accident, assigns rights from the policy to a healthcare provider (like Defendants) to seek payment from the insurer. If the provider submits a claim after the policy is exhausted—that is, after the insured's providers have submitted $50,000 in claims— the insurer will then deny the provider's claim. But the insurer will not first make a payment and then, after deeming a policy exhausted, claw it back. Rather, the insurer will altogether deny the claim on an exhausted policy.

theorize that Plaintiffs' success in this case would recover fraudulent payments made to Defendants on the exhausted policy, thereby reviving the policy by reducing the total disbursements paid on the policy below the previously exceeded coverage limit. Plaintiffs would then have to pay other providers' claims on the revived policy until its coverage limit is reached again. Effectively, Defendants argue that "[t]he alleged fraud did not add to [Plaintiffs'] economic loss, and it has suffered no RICO injury." Defs.' Mem. at 10. Defendants assert that the Court, by disregarding evidence of the arbitral awards, erroneously determined that Plaintiffs' alleged damages would not decrease.

    The Court's Decision identified Plaintiffs' damages as "payments made to Defendants in reliance on their fraudulent billing submissions." *Akiva*, 2025 WL 1434297, at *4; *see* Defs.' Mem. at 7 ("Plaintiffs sue under RICO to claw back payments they have made for services rendered by medical providers[.]"). In denying Defendants' motion to dismiss and, *inter alia*, deeming Plaintiffs' alleged damages clear and definite, the Court explained that "GEICO ha[d] not initiated any 'parallel proceedings' that 'could significantly affect the total amount owed'— GEICO seeks to recover through this case." *Akiva*, 2025 WL 1434297, at *4. The Court also rejected the argument "that GEICO, if it did not pay Defendants, would still have paid non-defendant providers the same amount due to policy exhaustion— [because it] require[d] the very speculation that RICO ripeness

5

proscribes." *Id*. This rejection implies that the Court considered the arbitral awards underlying the argument. But in the interest of justice, the Court will clarify its rationale for holding that the revival of an exhausted policy upon Plaintiffs' success in this litigation would not abate their alleged damages.

The dynamic central to Defendants' argument—that Plaintiffs' recovery here would revive the exhausted policies—does not render Plaintiffs' damages unclear or indefinite because a policy could become unexhausted *only if* Plaintiffs prevail in *this* litigation. Defs.' Mem. at 10 ("Upon [GEICO's] receipt of the $1,000 recovery [from Defendants], plaintiff would have to declare the policy no longer exhausted[.]"). The cases Defendants cite demonstrate that damages are unclear and indefinite when they could be abated before the conclusion of the litigation alleging those damages—not by some right or obligation that *might* come into existence only if Plaintiffs succeed in that litigation. *See, e.g.*, *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 768–69 (2d Cir. 1994) (deeming RICO damages for unpaid loan unclear and indefinite where foreclosure proceedings could abate amount sought); *Com. Union Assur. Co. v. Milken*, 17 F.3d 608, 612 (2d Cir. 1994) (explaining that RICO damages unripe where "invested capital" was "recouped" during litigation through ownership of partnership interests); *Motorola Credit Corp. v. Uzan*, 322 F.3d 130, 137 (2d Cir. 2003) (deeming RICO claim unripe where damages based on "the debt on the underlying contracts, or the

6

obligation to pay it" could be abated by foreclosure or ongoing arbitrations); *D'Addario*, 901 F.3d at 93–94 (finding RICO damages for lost inheritance unripe where proceedings regarding estate were ongoing in Probate Court).

Unlike the cited cases, which involved damages abatable pre-recovery by parallel proceedings or events triggered by existing rights and obligations, the damages here concern amounts irreducible by any presently possible proceeding or event besides this case. *See Sky Med.*, 17 F. Supp. 3d at 234 (validating ripeness of RICO damages for "allegedly fraudulent claims for no-fault benefits that the plaintiff[s]-insurance company had already paid, and, consequently . . . [no] pending litigation in a different judicial forum [] could reduce or eliminate").

Defendants' policy exhaustion argument does not present an existing condition that could "likely" satisfy Plaintiffs' damages independent of this case. *Stochastic Decisions, Inc. v. DiDomenico*, 995 F.2d 1158, 1166 (2d Cir. 1993); *cf. In re Merrill Lynch Ltd. Partnerships Litig.*, 154 F.3d 56, 59 (2d Cir. 1998) (explaining that "RICO injury is speculative when contractual or other legal remedies remain which hold out a real possibility that the debt, and therefore the injury, may be eliminated or significantly reduced"). Basing abatement on nonexistent rights or obligations "requires the very speculation that RICO standing proscribes." *Akiva*, 2025 WL 1434297, at *4.

7

Defendants, in their reply,[3] also argue that Plaintiffs' recovery would constitute an impermissible windfall because "recovery of any payment it made under an exhausted policy *reduces* its total loss under that policy." Defs.' Reply at 3, ECF No. 94. But, as Defendants acknowledge, policy exhaustion would allegedly require GEICO to fork over the money it recovers from Defendants "to the next-in-line provider." Defs.' Mem. at 10. Regardless, the securities fraud cases Defendants marshal in support of this point remedy the windfall by reducing damages after they are awarded, not by barring the claims altogether. *See Minpeco, S.A. v. Conticommodity Servs. Inc.*, 676 F. Supp. 486, 490–91 (S.D.N.Y. 1987) (denying summary judgment in securities fraud case due to fact issues regarding windfall damages offset "which must be resolved at trial"); *Abrahamson v. Fleschner*, 568 F.2d 862 (2d Cir. 1977) (remanding in securities fraud case for district court to calculate damages while preserving plaintiffs' "entitle[ment] to their day in court").

Thus, even accepting Defendants' premise, Plaintiffs have "actually suffered" ascertained damages only recoverable from this case. *See D'Addario*, 322 F.3d at 94 (citation modified). Holding otherwise would "effectively insulate

---

[3] "It is well-established that arguments may not be made for the first time in a reply brief." *Alvarez v. Experian Info. Sols., Inc.*, 661 F. Supp. 3d 18, 23 (E.D.N.Y. 2023), *aff'd*, No. 19-CV-3343, 2024 WL 3643269 (E.D.N.Y. Aug. 2, 2024). But the Court writes briefly to assure Defendants that this argument would not have warranted reconsideration.

fraudsters who engage in large scale abuse of the no-fault system, as no automobile insurer could ever assert a RICO claim to terminate a fraudulent enterprise and recoup stolen payments because the 'uncertainty' caused by potential policy exhaustion would extend 'until such time, if ever, as we know for sure that no additional claims for reimbursement can or will be made' under all relevant policies." Pls.' Mem. at 15 n.5, ECF No. 93 (quoting Defs.' Mem. at 11). "The payment of fraudulently obtained No-Fault benefits, without available recourse, serves to undermine and damage the integrity of the No-Fault system, which was created as a social reparations system for the benefit of consumers." *Allstate Ins. Co. v. Mun*, 751 F.3d 94, 99–100 (2d Cir. 2014).

### III.

The arbitration decisions proffered by Defendants, denying claims by non-defendant providers on exhausted policies, did not and do not change the Court's conclusion reached in the Decision that Plaintiffs have adequately alleged clear and definite damages sufficient to establish RICO ripeness. Accordingly, Defendants' motion for reconsideration is DENIED.

**SO ORDERED.**

        /S/ Frederic Block  
    FREDERIC BLOCK  
    Senior United States District Judge

Brooklyn, New York  
July 30, 2025